**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

REYMOND ENRIQUE SORIANO RAMIREZ,

Petitioner,

v. No. 2:26-cv-1140 KG/DLM

TODD BLANCHE, *Acting Attorney General of the United States, et al.*,

Respondents.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on Petitioner Reymond Enrique Soriano Ramirez's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Petitioner challenges the legality of his continued detention, asserting that Immigration and Customs Enforcement (ICE) lacks statutory authority to continue holding him in custody. He further contends that his confinement without an individualized custody hearing or bond hearing violates the Immigration and Nationality Act (INA) and the Due Process Clause of the Fifth Amendment. Petitioner also grounds his request for habeas relief on medical conditions he states have gone unaddressed during his detention. Having reviewed the record and relevant law, the undersigned recommends that the Petitioner's habeas petition be **DENIED**.[1]

## I. Factual and Procedural Background

Petitioner Reymond Enrique Soriano Ramirez is a citizen and national of the Dominican Republic. (Docs. 1 at 5; 6 at 1; 6-1 at 1, 3.) He received permanent resident status in the United States in 2009, making him a Lawful Permanent Resident (LPR). (Docs. 6 at 1; 6-1 at 1.) He reports

[1] On June 4, 2026, Chief United States District Judge Kenneth J. Gonzales entered an Order of Reference referring this case to the undersigned Magistrate Judge "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." (Doc. 7.)

residing in Miami, Florida, where he seeks to return upon release. (Doc. 1 at 6.) On July 18, 2017, Petitioner was convicted of two felony offenses—two counts of credit card forgery with intent to defraud, in violation of Fla. Stat. § 817.60(6)(a)—in the circuit and county courts of the Eleventh Judicial Circuit for Miami-Dade County.[2] (*See* Docs. 6 at 1; 6-1 at 3; 6-2 at 1, 6–7.) Petitioner was placed on probation and ordered to pay a sum of $598. (Docs. 6 at 1; 6-2 at 6–7; 6-4 at 4.) Petitioner later violated his probation in 2019. (Doc. 6-2 at 1.)

At some point, Petitioner left the United States and travelled to the Dominican Republic. (Doc. 1 at 9.) On August 29, 2025, Petitioner returned to the United States. (Docs. 1 at 5, 9; 6 at 2.) Upon reentry at Miami International Airport, Petitioner underwent inspection and presented a Dominican passport and his permanent resident card. (Docs. 6 at 2; 6-1 at 3.) A systems check conducted by Passport Control revealed Petitioner's prior criminal convictions. (Docs. 6 at 2; 6-1 at 3.) The check also revealed that Petitioner had not appeared before an immigration judge to determine his removability following those convictions. (Docs. 6 at 2; 6-2 at 3, 5.) Petitioner was placed under oath, and Customs and Border Protection (CBP) officers took a sworn statement in Spanish, during which Petitioner confirmed that he had been convicted of the credit card forgery charges and had not appeared before an immigration judge. (*See* Docs. 6 at 2; 6-2 at 5.) Subsequently, CBP officers served Petitioner with a notice to appear before an immigration judge and placed him in removal proceedings under 8 U.S.C. § 1229a,[3] as he appeared to be inadmissible

[2] A search of the Miami-Dade County Clerk of Courts criminal records reflects four felony convictions entered on August 18, 2017: one count of grand theft in the third degree (Fla. Stat. § 812.014(2)(c)); one count of obtaining goods valued at $300 or more by fraudulent use of a credit card (Fla. Stat. § 817.481); and two counts of credit card forgery with intent to defraud (Fla. Stat. § 817.60(6)(a)). *See Miami-Dade County Clerk of Courts*, Criminal Case No. F17-009404, https://www2.miamidadeclerk.gov/cjis/ (last visited July 27, 2026). As Respondents note, the discrepancy between DOH's I-213 form showing two felony convictions instead of four "is immaterial because under either scenario Petitioner committed at least one qualifying offense." (Doc. 6 at 2 n.1)

[3] 8 U.S.C. § 1229a outlines regular removal proceedings where "the United States charges an alien with removability, serves the alien with a notice to appear, brings the alien before an immigration judge, permits the alien to present evidence and argument, and affords the alien Board of Immigration Appeals review and ultimately, allows Courts of

pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(I). (*See* Docs. 6-1 at 5; 6-4 at 1.) Petitioner was then detained at Miami International Airport. (Doc. 1 at 9.)

In early September 2025, Petitioner was transferred to Krome Detention Center, an ICE detention center in Florida. (*Id.*; *see also* Doc. 6-1 at 5) His appearance before an immigration judge in Miami was scheduled for September 22, 2025, but was cancelled. (*See* Doc. 1 at 9.) Afterwards, ICE transferred Petitioner to El Paso, Texas, where ICE detained him at the East Montana Detention Center. (*Id.*) On February 27, 2026, Petitioner was then transferred to the Otero County Processing Center in New Mexico. (*Id.* at 10.) Petitioner subsequently filed a motion to terminate his immigration proceedings, but on March 4, 2026, an immigration judge denied the motion. (Docs. 6 at 2; 6-5.)

On April 13, 2026, Petitioner filed his Petition for Writ of Habeas Corpus, challenging his continued detention without a bond hearing. (*See* Doc. 1.) The Government Respondents filed their response on April 28, 2026, asserting that Petitioner is properly detained under 8 U.S.C. § 1226(c)(1)(A), which mandates his detention.[4] (*See* Doc. 6.) Petitioner did not file a reply.

The matter is fully briefed and ready for disposition.

## II. Legal Standard

Federal courts possess longstanding authority to review the legality of executive detention through the writ of habeas corpus. 28 U.S.C. § 2241 expressly authorizes courts to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of

---

Appeals review." *Singh v. Noem*, No. 2:25-cv-1110 JB/KK, 2026 WL 146005, *19 n. 17 (D.N.M. Jan. 20, 2026) (citation omitted).

[4] Warden Respondents did not file a separate response. This is consistent with the standard practice in these § 2241 immigration-detention cases, where wardens of private detention facilities either expressly join the federal Respondents' arguments or do not appear at all. Courts in this District have treated the federal Respondents' position as applying equally to the warden in such circumstances. *See Duhan v. Noem*, No. 2:26-cv-0019 MIS/JFR, 2026 WL 266619, at *1 n.2 (D.N.M. Feb. 2, 2026) (citations omitted).

the United States." 28 U.S.C. § 2241(c)(3). The Tenth Circuit has recognized that "[c]hallenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

The fundamental purpose of a § 2241 habeas corpus proceeding is to allow a detainee to challenge the legality of his custody and to secure release from unlawful detention. *See Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012) (internal quotation marks omitted). Because Petitioner challenges the legality of his continued detention, his claim falls squarely within the scope of § 2241.

No party has identified any factual dispute requiring an evidentiary hearing, and the issues presented are purely legal and fully briefed. As such, the existing record is sufficient to resolve the habeas petition.

## III. Discussion

Petitioner argues that his continued detention is unlawful because ICE continues to detain him without an individualized custody determination or a bond hearing, and that such detention violates the Due Process Clause. (*See* Doc. 1 at 5.) Petitioner also grounds his claim for habeas relief in medical conditions he asserts have gone unaddressed during his detention. (*See id.* at 6.) Respondents maintain that Petitioner is properly detained under § 1226(c)(1)(A) as an inadmissible alien due to his commission of an offense covered in § 1182(a)(2)(A)(i)(I) and therefore subject to mandatory detention without bond. (*See* Doc. 6 at 3.)

For the reasons explained below, the undersigned concludes that § 1225(b)(2)—not § 1226(c)(1)(A)—governs Petitioner's custody. Because § 1225(b)(2), also requires mandatory detention for the duration of removal proceedings, Petitioner's continued detention is lawful under the INA and the Fifth Amendment.

### A. Seeking-Admission Status

LPR status allows a noncitizen to permanently reside in the United States. *See* 8 U.S.C § 1101(a)(20); *see also Barton v. Barr*, 590 U.S. 222, 227 (2020). LPRs "usually do not have to reapply for admission when they return from temporary overseas travel." *Blanche v. Lau*, 146 S. Ct. 1981, 1986 (2026) (citing 8 U.S.C. § 1101(a)(13)(C)). But Congress created specific exceptions in which a returning LPR is regarded as "seeking admission." *See* 8 U.S.C. § 1101(a)(13)(C).

One such exception applies when the LPR "has committed an offense identified in section 1182(a)(2)." *See id.* Crimes involving moral turpitude (CIMTs) fall within § 1182(a)(2). *See* 8 U.S.C. § 1182 (a)(2)(A)(i)(I). Thus, a returning LPR who has committed a CIMT is treated as seeking admission and may be detained under § 1225(b). *See Arias Abreu v. Bondi*, No. 1:26-cv-0487 KG/GBW, 2026 WL 800723, at *2 (D.N.M. Mar. 23, 2026).

The question here is whether Petitioner's convictions of credit card forgery under Florida Statute § 817.60(6)(a) qualify as CIMTs. For the reasons explained below, the undersigned concludes that Petitioner has committed a CIMT, and thus is properly regarded as seeking admission.

Moral turpitude is defined as "conduct which is inherently base, vile, or depraved, contrary to the accepted rules of morality and the duties owed between man and man . . . ." *Rodriguez-Heredia v. Holder*, 639 F.3d 1264, 1268 (10th Cir. 2011) (quoting *Wittgenstein v. INS*, 124 F.3d 1244, 1246 (10th Cir. 1997)). To determine whether a particular conviction qualifies as a CIMT, courts utilize the categorical approach. *Id.* at 1267 (citing *Hamilton v. Holder*, 584 F.3d 1284, 1286–87 (10th Cir. 2009)). Under this approach, courts consider the statutory definition of the offense and not the factual basis of a conviction. *See Mathis v. United States*, 579 U.S. 500, 504-05 (2016); *see also Rodriguez-Heredia*, 639 F.3d at 1267 (quoting *Hamilton*, 584 F.3d at 1287 n. 4). Indeed, "[a] state conviction qualifies as a CIMT, 'only if all violations of the statute would

qualify regardless of how the specific offender might have committed it on a particular occasion'". *See Morones-Quinones v. Holder*, 591 F. App'x 660, 662 (10th Cir. 2014) (quoting *United States v. Trent*, 767 F.3d 1046, 1052 (10th Circ. 2014)).

To be sure, crimes involving fraud have always been treated as CIMTs. *See Wittgenstein*, 124 F.3d at 1246 (quoting *Jordan v. De George*, 341 U.S. 223, 232 (1951)).

Applying this standard to Petitioner's case, Petitioner was convicted under Florida statute 817.60(6)(a), titled "Theft; obtaining credit card through fraudulent means; Forgery of credit card." The statute provides:

> A person who, with intent to defraud a purported issuer or a person or organization providing money, goods, services, or anything else of value or any other person, falsely makes, falsely embosses, or falsely alters in any manner a credit card or utters such a credit card or who, with intent to defraud, has a counterfeit credit card or any invoice, voucher, sales draft, or other representation or manifestation of a counterfeit credit card in his or her possession, custody, or control is guilty of credit card forgery and is subject to the penalties set forth in s. 817.67(2).

Because every means of committing the offense—whether falsely making, altering, or possessing a counterfeit credit card—requires an intent to defraud, the offense categorically involves fraud. *See Jimenez v. Sessions*, 893 F.3d 704, 709–10 (10th Cir. 2018) (explaining that a statutory offense listing alternative means, such as § 817.60(6)(a), is still indivisible and subject to categorical approach). Accordingly, § 817.60(6)(a) is categorically a CIMT. *See Wittgenstein*, 124 F.3d at 1246; *De George*, 341 U.S. at 232.

The Tenth Circuit decision in *Morones-Quinones v. Holder* further confirms that offenses involving deception undertaken to obtain an unlawful benefit, or where fraud is an ingredient of the offense, are categorically CIMTs. *See Morones-Quinones*, 591 F. App'x at 663–64. The *Morones-Quinones* court considered a Colorado criminal impersonation statute that did not explicitly contain fraud but required a defendant to "knowingly assume[ ] a false or fictitious

identity or capacity" and then act with the intent to "unlawfully gain a benefit," "injure," or "defraud" another. *Id.* at 661. Although the statute did not expressly include fraud as an element, the Tenth Circuit held that "all convictions under [the statute] *inherently* involve fraud and are therefore categorically CIMTs." *Id.* at 663 (emphasis added). The court explained that the statute necessarily involved deceit because the perpetrator must misrepresent her identity to obtain a benefit she "cannot legally obtain[,]" thereby inducing another person to act to his detriment. *Id.* at 664. The court emphasized that fraud need not appear explicitly in the statutory text for an offense to qualify as a CIMT; it is sufficient that fraud is inherent in the offense. *See id.* at 663 (collecting cases).

Here, fraud is not merely an ingredient in the offense, but an express element of the offense. *See* Fla. Stat. § 817.60(6)(a). The statute requires that the defendant act "with intent to defraud" when falsely making, altering, uttering, or possessing a counterfeit credit card. *See id.* Because every violation of § 817.60(6)(a) requires an intent to defraud, the offense is categorically a CIMT. *See Wittgenstein*, 124 F.3d at 1246; *De George*, 341 U.S. at 232. Consequently, under 8 U.S.C. § 1182(a)(2)(A)(i)(I), the commission of a CIMT renders an alien inadmissible. *See* 8 U.S.C. § 1182(a).

Having determined that Petitioner committed a CIMT under § 1182(a)(2)(A)(i)(I), the Government may regard him as seeking an admission under 8 U.S.C. § 1101(a)(13)(C)(v), notwithstanding his LPR status. *See Lau*, 146 S. Ct. at 1985–86. Recently the Supreme Court in *Lau*, held that an LPR may be regarded as seeking admission under § 1101(a)(13)(C)(v) upon the commission of a CIMT, even if the conviction occurs later. *Id.* at 1988–90. The Court explained that § 1101(a)(13)(C)(v) authorizes the Government to classify a lawful permanent resident as seeking admission whenever he "has committed an offense identified in section 1182(a)(2),"

including a crime involving moral turpitude, and that no heightened evidentiary showing is required at the border. *Id.* at 1986, 1988–89. The Court further clarified that removal on inadmissibility grounds proceeds in two steps: commission of the offense permits DHS to treat the LPR as seeking admission, and conviction of the offense renders him inadmissible. *See id.* at 1989–90. Here, Petitioner satisfies both steps: he committed and was convicted of a CIMT. (*See* Docs. 6 at 1; 6-1 at 3; 6-2 at 1, 6–7.) He is therefore properly regarded as seeking admission and is inadmissible under § 1182(a)(2)(A)(i)(I), and is subject to removal proceedings under § 1229a. *See* Lau, 146 S. Ct. at 1988.

Having established that Petitioner is seeking admission and is inadmissible under § 1182(a), the Court next turns to the statutory framework governing his detention.

**B. Detention Under § 1225 vs. § 1226**

The detention of noncitizens prior to a final order of removal is governed by 8 U.S.C. §§ 1225 and 1226. *See Jennings v. Rodriguez*, 583 U.S. 281, 287–89 (2018). The statutory question here is whether Petitioner is properly detained under § 1226(c)(1)(A), which applies to noncitizens already present in the United States, or under § 1225(b)(2), which applies to noncitizens seeking admission into the United States. *See Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1248, 1250 (10th Cir. 2026). For the reasons explained below, the undersigned concludes that § 1225(b)(2)—not § 1226(c)(1)(A)—governs Petitioner's detention.

Respondents assert that § 1226(c)(1)(A) mandates Petitioner's detention because that provision authorizes detention without a bond hearing for noncitizens convicted of a CIMT. (Doc. 6 at 3.) But the Tenth Circuit recently addressed the interaction between §§ 1225 and 1226 in *Santillan Quiroz v. Mullin*, and that framework controls here.

In *Santillan Quiroz v. Mullin*, the Tenth Circuit evaluated the statutory basis for the government's detention of a noncitizen who lived in the United States since 2006 and was detained

in November 2025. *Santillan Quiroz*, 180 F.4th at 1232–34. ICE sought to justify his detention under § 1225(b)(2), which requires mandatory detention without a bond hearing for certain applicants for admission. *Id*. at 1234. The court rejected that argument, holding that § 1225(b)(2) applies only at the border or ports of entry, whereas § 1226 governs detention in the interior. *Id.* at 1245–48. The court then concluded that Santillan Quiroz's detention could be authorized only under § 1226(a). *Id.* at 1237, 1248.

Section 1225 contains two provisions mandating the detention of aliens under removal proceedings, §§ 1225(b)(1) and (b)(2). *See Santillan Quiroz*, 180 F.4th at 1234. First, § 1225(b)(1) requires expedited removal—"without further hearing or review"—for applicants for admission, who, during inspection, are found inadmissible under §§ 1182(a)(6)(C) or 1182(a)(7), unless they express fear of persecution or an intent to apply for asylum. *See* 8 U.S.C. § 1225(b)(1)(A)(i). This 1225(b)(1) section applies to applicants for admission that fail to show that they have been physically present in the United States for a continuous two-year period prior to inspection. *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(II).

The second detention provision, § 1225(b)(2)(A), mandates detention of a subset of applicants for admission—those whom the Government treats as "seeking admission." *See* 8 U.S.C. § 1225(b)(2)(A). Under this subsection, a noncitizen who is seeking admission and is found inadmissible must be detained for full removal proceedings under § 1229a. *See id.* A noncitizen is "seeking admission" only "when he takes some kind of ongoing action to request lawful entry into the United States." *Santillan Quiroz*, 180 F.4th at 1238.

Neither § 1225(b)(1) nor § 1225(b)(2) discuss bond hearings, and the Tenth Circuit held that both provisions require mandatory detention without bond during removal proceedings. *See id.* at 1234, 1237, 1247–48. Thus, § 1225 applies only at the border or ports of entry because the

statute governs inspection of arriving noncitizens, its text and structure are border-focused, longstanding practice has limited § 1225 to border cases, and a noncitizen already in the interior cannot "seek admission" but instead may seek an adjustment of status. *See id.* at 1239–40, 1246–48.

By contrast, § 1226 governs the detention of aliens apprehended in the interior prior to the entry of a removal order. *See id.* at 1246–47. Noncitizens detained under § 1226(a) are generally eligible for bond. *See id.* at 1247 (citing 8 U.S.C. § 1226(a)(2)); *see also Nielsen v. Preap*, 586 U.S. 392, 397 (2019)).

While § 1226(a) generally permits release on bond or parole, § 1226(c) carves out exceptions to that general rule. *See Santillan Quiroz*, 180 F.4th at 1247 (citing 8 U.S.C. § 1226(c)(1)(A), (D), (E)). Under § 1226(c)(1), the Attorney General must detain certain inadmissible or deportable noncitizens, and § 1226(c)(2) renders such aliens ineligible for release on bond or parole.[5] *See Preap*, 586 U.S. at 398. Section 1226(c) "is simply a limit on the authority conferred by § 1226(a)[,]" not a standalone detention provision, and therefore operates only as an exception to § 1226(a)'s general rule permitting release on bond. *See id.* at 409; *see also Santillan Quiroz*, 180 F.4th at 1247 (citations omitted).

Because § 1226(a) governs interior detentions, mandatory detention under § 1226(c) applies only when a noncitizen is detained under § 1226(a)—that is, when the noncitizen is apprehended in the interior. *See Santillan Quiroz*, 180 F.4th at 1247–48.

Applying this framework, the Tenth Circuit first determined that Santillan Quiroz was an "applicant for admission," as he had never been admitted to the United States when he entered.

---

[5] An alien already in the United States may become deportable by (1) inadmissibility at time of entry or change in status, (2) a commission of a criminal offense, (3) failure to comply with immigration registration, (4) security grounds, (5) becoming a public charge, (6) unlawfully voting. *See* 8 U.S.C. 1227. "Deportable aliens."

*See id.* at 1237–38. The court further held that he was not "seeking admission" at the time of his detention because he had no present or ongoing request for lawful entry. *See id.* at 1238–39. As a result, he could not be detained under § 1225(b)(2), and given that he had been present in the interior since 2006, he also could not be detained under § 1225(b)(1). *See id.* at 1237–40, 1245–48.

The court therefore concluded that his detention must fall under § 1226, which governs interior arrests. *See id.* at 1247–48, 1251 n. 13. Apart from a single DUI, Santillan Quiroz had no criminal history and did not fall within any of § 1226(c)'s mandatory detention categories. *Id.* at 1233. Because the government could only justify their detention under § 1226(a), he was eligible for a bond hearing. *Id.* at 1247–48, 1251 n. 13.

**1. Section 1225(b)(1) does not apply to Petitioner**

To begin, Petitioner here is properly regarded as seeking admission under § 1101(a)(13)(C)(v) because his convictions under Florida Statute § 817.60(6)(a) constitute CIMTs, rendering him inadmissible under § 1182(a)(2)(A)(i)(I). *See Lau*, 146 S. Ct. at 1986–90. As a returning LPR charged under § 1182(a)(2), Petitioner is therefore treated as seeking admission at the port of entry.

Section 1225(b)(1), however, does not apply. Although Petitioner was an applicant for admission at Miami International Airport, expedited removal under § 1225(b)(1) is triggered only when an immigration officer determines that an applicant for admission is inadmissible under § 1182(a)(6)(C) or § 1182(a)(7). *See* 8 U.S.C. § 1225(b)(1)(A)(i); *see also Singh v. Noem*, No. 2:25-cv-1110 JB/KK, 2026 WL 146005, at *13 (D.N.M. Jan. 20, 2026) ("Section 1225(b)(1) authorizes immigration officers to conduct expedited removal for specified categories of arriving aliens whom the officer determines to be inadmissible for reasons including fraud or

misrepresentation . . . or a lack of valid entry documents . . . .” (citing 8 U.S.C. § 1182(a)(6)(C), 8 U.S.C. § 1182(a)(7)).

Here, DHS charged him solely under § 1182(a)(2)(A)(i)(I) based on his CIMT conviction, rather than charging him under § 1182(a)(6)(C) or § 1182(a)(7), the only inadmissibility grounds that trigger § 1225(b)(1). (*See* Docs. 6-1 at 3; 6-4 at 1.) Thus, the statutory prerequisites for § 1225(b)(1) are not met.

**2. Section 1225(b)(2)(A) governs petitioner’s detention**

Because Petitioner is properly regarded as seeking admission under § 1101(a)(13)(C)(v) and is inadmissible under § 1182(a)(2)(A)(i)(I), his detention is governed by § 1225(b)(2)(A). Unlike the noncitizen in *Santillan Quiroz*, Petitioner was apprehended at a port of entry while actively requesting admission. *See Santillan Quiroz*, 180 F.4th at 1238 (defining “seeking admission” as taking ongoing action to request lawful entry). Section 1225(b)(2)(A) applies precisely to this circumstance.

Petitioner’s prior LPR status does not alter this conclusion. Under § 1101(a)(13)(C)(v), a returning LPR who “has committed an offense identified in section 1182(a)(2)”—including a CIMT—is treated as seeking admission notwithstanding his LPR status. *See Lau*, 146 S. Ct. at 1986–90. Petitioner’s CIMT conviction therefore places him squarely within § 1101(a)(13)(C)(v).

Section 1225(b)(2)(A) mandates detention of a noncitizen who is seeking admission and found inadmissible, and requires that he “shall be detained” throughout the pendency of full removal proceedings under § 1229a. *See* § 1225(b)(2)(A); *see also Santillan Quiroz*, 180 F.4th at 1234, 1237, 1245, 1247–48 (explaining that detentions under § 1225(b)(2)(A) are mandatory and without bond).

Similarly, in *Arias Abreu v. Bondi*, a returning LPR was detained at an airport after CBP discovered a CIMT conviction. *See Arias Abreu*, 2026 WL 800723, at *1. The court held that the

petitioner was properly regarded as seeking admission under § 1101(a)(13)(C)(v) and was inadmissible under § 1182(a)(2)(A)(i)(I). *See id.* at *2. Petitioner's case parallels that of the petitioner in *Arias Abreu*: he committed and was convicted of a CIMT, and DHS properly regarded him as seeking admission and inadmissible under § 1182(a)(2)(A)(i)(I). (*See* Docs. 6 at 3; 6-1 at 3, 5; 6-2 at 1, 16; 6-4; 6-5.)

Respondents argue that Petitioner may be detained under § 1226(c); but *Santillan Quiroz* forecloses that position. (*See* Doc. 6 at 3.) In *Santillan Quiroz v. Mullin*, the Tenth Circuit held that § 1225 governs detentions arising from inspections at the border or ports of entry, while § 1226 applies only to arrests made in the interior. *Santillan Quiroz*, 180 F.4th at 1246–48. Because § 1226(c) applies only when detention arises under § 1226(a)—that is, only when the arrest occurs in the interior—§ 1226(c)(1)(A)'s CIMT provision does not apply here. *See id.* at 1247.

Accordingly, § 1225(b)(2)(A) governs Petitioner's detention, and he is subject to mandatory, bondless detention during the pendency of his § 1229a removal proceedings.

### C. Due Process Claim

Petitioner also argues that his continued detention without an individualized custody determination or bond hearing violates the Due Process Clause of the Fifth Amendment. (*See* Doc. 1 at 5.) But § 1225(b)(2)(A) expressly mandates detention of noncitizens who are seeking admission and found inadmissible. *See Santillan Quiroz*, 180 F.4th at 1234, 1247–48.

The Supreme Court has confirmed that noncitizens detained under § 1225 are not entitled to additional process beyond what Congress has provided. In *DHS v. Thuraissigiam*, the court explained that a noncitizen "at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." *DHS v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (citing *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892)). Congress may set the conditions for lawful entry, and

at the border, the only procedural rights a noncitizen may invoke are "those afforded by statute." *Id.*

Because § 1225(b)(2)(A) mandates detention throughout removal proceedings and does not authorize a bond hearing, Petitioner's continued detention does not violate the Due Process Clause.

In *DHS v. Thuraissigiam*, the petitioner entered the United States without inspection, was apprehended by a Border Patrol agent, and was set for expedited removal under § 1225(b)(1). *See id.* at 114. After his asylum claim was rejected, he filed a habeas petition challenging the procedures used in his expedited removal proceedings. *See id.* The Supreme Court emphasized that noncitizens arriving at ports of entry, or those entering without inspection, have not "effected an entry" into the United States. *Id.* at 139–40 (citation omitted). Extending to such individuals the procedural protections afforded to those that are naturalized, domiciled, or admitted, "would undermine the sovereign prerogative of governing admission to this country and create a perverse incentive to enter [illegally]." *Id.* at 140 (internal quotation marks and citation omitted). As a result, an alien at the threshold of entry "has only those rights . . . that Congress has provided by statute." *Id.* Applying that principle, the Court rejected the petitioner's habeas petition. *Id.* at 140–41.

This reasoning confirms that Petitioner has only those rights afforded by § 1225(b)(2). As a returning LPR treated as seeking admission under § 1101(a)(13)(C)(v). Petitioner is physically present on U.S. soil but not admitted, and therefore not entitled to procedural protections beyond those Congress has specified. Petitioner arrived at a port of entry, was inspected, and was deemed inadmissible under § 1182(a)(2)(A)(i)(I). Because § 1225(b)(2)(A) mandates detention throughout removal proceedings and does not authorize a bond hearing or individualized custody review,

Petitioner—like the petitioner in *Thuraissigiam*—has no constitutional entitlement to additional process. His continued detention therefore does not violate the Due Process Clause.

Courts in this district addressing similar detention scenarios have held the same. In *Arias Abreu v. Bondi*, the court upheld the detention of a returning LPR convicted of a CIMT who was treated as seeking admission and denied a bond hearing, concluding that such detention was lawful under § 1225(b)(2)(A). *See Arias Abreu*, 2026 WL 800723, at *1–2. And in *Pervaiz v. Castro*, the court held that an arriving alien detained at the border is governed by § 1225, not § 1226, and therefore is not entitled to a bond hearing while removal proceedings remain pending. *See Pervaiz v. Castro*, No. 2:26-cv-00557 SMD/JHR, 2026 WL 1970607, at *1–4 (D.N.M. July 8, 2026). The court explained that arriving aliens have only those rights Congress has provided by statute, and that § 1225(b) mandates detention without bond during removal proceedings. *Id.* at *3.

Accordingly, Petitioner's detention under § 1225(b)(2)(A) without a bond hearing is lawful and does not violate the Due Process Clause.

### D. Medical Problems

Petitioner further challenges his detention on grounds his medical condition has worsened during his detention and that this deterioration warrants relief. (*See* Doc. 1 at 6.) Respondents contend that such claims must be brought in a civil rights action rather than through a habeas petition. (*See* Doc. 6 at 4.) The undersigned agrees that challenges to conditions of confinement must be raised in a civil rights action.

The Tenth Circuit draws a clear distinction between claims challenging the fact or duration of confinement, which must be brought in habeas, and claims challenging the conditions of confinement, which must be brought in a civil-rights suit. *See Palma-Salazar*, 677 F.3d at 1035–36. In *Palma-Salazar*, the petitioner sought a transfer to a different holding facility, not release,

and the court held that such a claim concerns conditions of confinement and therefore falls outside the scope of habeas. *Id.* at 1036.

Here, Petitioner's allegations regarding worsening medical problems similarly challenge the conditions of his confinement, not the legality or duration of the confinement itself. (*See* Doc. 1 at 6.) He does not assert that his medical condition renders his detention unlawful under the immigration statutes; rather, he asserts that the conditions at the facility have negatively affected his health. (*See id.*) Such claims must be pursued through a civil-rights action, not through a petition for habeas corpus. Accordingly, Petitioner's medical condition claim cannot be addressed through habeas.

## IV. Conclusion

For the reasons stated above, the undersigned **RECOMMENDS** the following:

1. The Petition for Writ of Habeas Corpus (Doc. 1) should be **DENIED**, because Petitioner's continued detention under § 1225(b)(2)(A) does not violate the Immigration and Nationality Act..
2. Petitioner's claim under the Due Process Clause of the Fifth Amendment does not provide a basis for relief. As an arriving alien treated as seeking admission, Petitioner is entitled only to the procedures Congress has afforded under the INA, and § 1225(b)(2)(A) does not authorize a bond hearing.
3. Petitioner's claim regarding medical conditions challenges the conditions of confinement and must be brought, if at all, in a civil rights action rather than through habeas corpus.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE